Dunbar v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-489-CR

ERIC D. DUNBAR APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury found appellant, Eric D. Dunbar, guilty of aggravated sexual assault of a child under fourteen years of age, and the trial judge sentenced him to forty years’ imprisonment.  In nine issues, Dunbar challenges both his conviction and punishment.  We will affirm. 

II.  Background Facts and Procedural History

In December of 2002, the complainant’s mother discovered a diary in which her thirteen-year-old daughter, C.D.E., described having sex with Dunbar.  Dunbar was the live-in boyfriend of C.D.E’s sister, Shanika.  C.D.E.’s mother confronted her about the diary entries and filed a complaint with police.  Dunbar was subsequently indicted on two counts of aggravated sexual assault of a child under fourteen years of age.  A jury convicted Dunbar on the first count but acquitted him on the second count.

III.  Motion for Directed Verdict

In his eighth issue, Dunbar contends that the trial court erred when it overruled his Motion for Directed Verdict.
(footnote: 2)  Specifically, Dunbar contends that the evidence is insufficient to support his conviction as a matter of law.

A.  Standard of Review

A challenge to the denial of a motion for instructed verdict is actually a challenge to the legal sufficiency of the evidence.  
McDuff v. State
, 939 S.W.2d 607, 613 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997); 
Franks v. State
, 90 S.W.3d 771, 789 (Tex. App.—Fort Worth 2002, no pet.).

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).  

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict. 
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

B.  Analysis

The State indicted Dunbar on two counts of aggravated sexual assault of a child under fourteen years of age.  However, the record reflects that Dunbar was acquitted on the second count.  Thus, we will evaluate the legal sufficiency of the evidence to support Dunbar’s conviction under the first count of the indictment.  To convict Dunbar of aggravated sexual assault of a child under fourteen, the State had to prove that Dunbar intentionally or knowingly caused the sexual organ of the victim, a child younger than fourteen years of age who was not his spouse, to contact his sexual organ. 
 See
 
Tex. Penal Code Ann.
 § 22.021(a)(B)(iii) (Vernon Supp. 2004-05).

At trial, C.D.E., testified that she turned thirteen years of age during June of 2002 and that she had never been married.  She testified that near the end of that month, while spending the night at her sister’s home, she and Dunbar had sexual intercourse.  Specifically, 
C.D.E. testified that she was asleep on the couch when she was awakened by Dunbar rubbing her legs.  She testified that Dunbar then moved his hand up her leg and under her clothes.  She stated that he touched her breast, then put his hand into her pants, where he touched and rubbed her vagina.  She testified that after he rubbed her vagina, he laid behind her on the couch and proceeded to put his penis inside of her.  She indicated that after a few minutes he took his penis out of her, ejaculated, and went back to sleep.

Dunbar contends that C.D.E.’s testimony is not credible and that no rational trier of fact could have found him guilty.  In support of his contention, Dunbar asserts that C.D.E. recanted “some of the statements in the diary”
(footnote: 3) and argues that the jury must have determined much of the evidence to be untrue because they found him not guilty of one of the charges.  We disagree. 

A
s the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony, a jury may believe or disbelieve all or any part of a witness’s testimony. 
 McKinny v. State
, 76 S.W.3d 463, 468-69 (Tex. App.—Houston [1st Dist.] 2002, no pet.). 
 A court of appeals must show deference to such a jury finding.  
Cain v. State
, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder.
  Dewberry
,
 
4 S.W.3d at 740. 
 

After viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that Dunbar committed the offense of aggravated sexual assault of a child under fourteen years of age.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.
 
 
Accordingly, we hold that the trial court did not err when it overruled Dunbar’s Motion for Directed Verdict because the evidence was legally sufficient to support Dunbar’s conviction.  We overrule Dunbar’s eighth issue.   
   
 IV.  Commitment Questions

In his first two issues, Dunbar argues that the trial court erred by (1) overruling his motion to quash the entire jury panel because a questionnaire presented to potential jurors contained an “unfair commitment question” asking potential jurors whether they could convict on the testimony of a child assuming they believed the testimony of the child, and (2) overruling his objection during 
voir dire 
to an “unfair commitment question” regarding whether potential jurors “could convict [on] the testimony of one witness alone.”  The State acknowledges that both questions are commitment questions but argues that they are not improper commitment questions.  We agree. 

A.  Standard of Review

A trial court has broad discretion over the process of selecting a jury. 
Barajas v. State
, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); 
Allridge v. State
, 762 S.W.2d 146, 167 (Tex. Crim. App. 1998), 
cert. denied
, 489 U.S. 1040 (1989); 
Lydia v. State
, 117 S.W.3d 902, 904 (Tex. App.—Fort Worth 2003, pet. ref’d).  We leave to the trial court’s discretion the propriety of a particular question, and the trial court’s discretion will not be disturbed on appeal absent an abuse of that discretion. 
 Sells v. State
, 121 S.W.3d 748, 755 (Tex. Crim. App.), 
cert. denied
, 540 U.S. 986 (2003); 
Barajas
, 93 S.W.3d at 38; 
Allridge, 
762 S.W.2d at 163; 
Lydia
, 117 S.W.3d at 904.  A trial court’s ruling constitutes an abuse of discretion only when it is made without reference to any guiding rules or principles, so as to render the conclusion ultimately reached so arbitrary and unreasonable that it falls outside the zone within which reasonable minds may differ. 
 See Montgomery v. State
, 810 S.W.2d 372, 380, 391 (Tex. Crim. App. 1990) (op. on reh’g). 

B.  Analysis

The determination of whether a question propounded to venire members during 
voir dire 
is a proper commitment question is a three-part inquiry.  
See Standefer v. State
, 59 S.W.3d 177, 179-80 (Tex. Crim. App. 2001).  In 
Standefer
, the court of criminal appeals held that during 
voir dire 
a trial court should first determine if a question is a commitment question.  59 S.W.3d at 181-82.  If it is a commitment question, then the court must decide whether it is nevertheless a proper question.  
Id
.  For it to be a proper commitment question, one of the possible answers to the question must give rise to a valid challenge for cause.  
Id
.  However, even if a question meets the “challenge for cause” requirement, the inquiry does not end there.  
Id
. at 182.  A proper commitment question must also contain only those facts necessary to test whether a prospective juror is challengeable for cause.  
Id
.

In this case, the State acknowledges that both questions were commitment questions.  Thus, for each question we must determine (1) whether an answer to the question would give rise to a valid challenge for cause, and (2) whether the question contains only those facts necessary to determine whether a prospective juror is challengeable for cause. 
 See Standefer
, 59 S.W.3d at 179-80.

C.  The Jury Questionnaire

In his first issue, Dunbar contends that the trial court erred in overruling his motion to quash the entire jury panel because of the following question posed to prospective jurors before 
voir dire
: “Could you convict on the testimony of a child assuming you believed the child?”  Dunbar concedes that this court in 
Bobo v. State 
considered the propriety of a very similar question and found the question not to be improper.  
No. 2-02-371-CR, 2004 WL 541380, *1 (Tex. App.—2004, pet. ref’d) (not designated for publication).  Dunbar asserts that we erred in 
Bobo
 and urges us to reverse our decision.  We decline to do so.

As stated in 
Bobo
, “a challenge for cause is properly based on bias if the venire member has an automatic predisposition toward a witness’s credibility based upon knowledge of a certain fact about the witness.” 
 Id
. (citing 
Harris v. State
, 122 S.W.3d 871, 880 (Tex. App.—Fort Worth 2003, pet ref’d).  Here, as in 
Bobo
, had a venire member answered “no” to the challenged question, the State would have been entitled to a challenge for cause due to the automatic predisposition demonstrated by the venire member against testimony from children whom the venire member believed were testifying truthfully.  
Id
. Further, the question contained only those facts necessary to a challenge for cause. 
 See id
.  Accordingly, we conclude that the trial court did not abuse its discretion when it overruled Dunbar’s motion to quash the jury panel.  We overrule Dunbar’s first issue.

D.  The Question During Voir Dire

In his second issue, Dunbar contends that the trial court erred in overruling his objection to the following question posed by the State to the panel regarding whether they could convict on the testimony of one witness alone: 

Is there anyone that would require more than one witness?  If you believe that witness beyond a reasonable doubt on this Defendant, Tarrant County, Texas, intentionally or knowingly, sexually contact with the Defendant’s penis on or inside the injured party’s female sexual organ, and the child is under 14, not married to him.  Is there anyone here that would require the State to present more than one witness if you believe that witness beyond a reasonable doubt on every element?

When Dunbar objected, the prosecutor responded, “Your Honor, I’m asking them to follow the law,” to which the trial court replied, “Overruled.  Let’s move along.” 

In 
Standefer
, the Texas Court of Criminal Appeals expressly recognized that attorneys conducting 
voir dire 
could seek to bind members of the venire to follow the law.  59 S.W.3d at 181.  Further, the State may challenge a juror for cause when the juror would hold the State to a higher standard than “beyond a reasonable doubt.”  
Coleman v. State
, 881 S.W.2d 344, 360 (Tex. Crim. App. 1994), 
cert. denied
, 513 U.S. 1096 (1995).  Consequently, a prospective juror is properly subject to challenge for cause if he indicates that he could not convict based on the testimony of one witness, even if he believed that witness beyond a reasonable doubt.  
See Castillo v. State
, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995).  However, prospective jurors are not challengeable for cause merely for setting their threshold for reasonable doubt higher than the minimum required by law, e.g., a prospective juror who would require the testimony of more than one witness to be convinced beyond a reasonable doubt.  
See id
.

Thus, the State was entitled to inquire if prospective jurors would hold the State to a higher burden of proof than the law would allow.  
See
 
Standefer
, 59 S.W.3d at 181; 
Castillo
, 913 S.W.2d at 533-34.  A “yes” answer from a prospective juror would give rise to a challenge for cause.  Further, the State’s question contained only those facts necessary to establish the elements of the crime.  
See Standefer
, 59 S.W.3d at 181.  Accordingly, we conclude that the trial court did not abuse its discretion when it overruled Dunbar’s objection.
 
 We overrule Dunbar’s second issue.  

V.  C.D.E.’s Diary 

In his third issue, Dunbar contends that the trial court abused its discretion by denying two motions for mistrial.  In addition, he contends that the trial court erred when it overruled his objections to the admission of a diary. 

A.  Motions for Mistrial

1.  Standard of Review

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for mistrial, the issue is whether the trial court abused its discretion in denying the mistrial.  
Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  A trial court does not abuse its discretion if its decision is at least within the zone of reasonable disagreement. 
Montgomery
, 810 S.W.2d at 391.

2.  Analysis

During opening statement, the prosecutor told the jury that C.D.E.’s mother discovered that C.D.E. was having sex with Dunbar when she read C.D.E.’s diary.  Dunbar’s defense counsel objected to the statement because it was subject to a prior motion in limine and requested a ruling outside the presence of the jury.  The trial court sustained the objection by instructing the prosecutor not to go into the diary’s contents and instructed the jury to disregard the statement, but the trial court denied Dunbar’s motion for mistrial. Shortly thereafter, during the testimony of the C.D.E.’s mother, the following exchange took place: 

[Prosecutor]:  Okay. And without going into how it was that you learned there may be a problem, did something prompt you to talk with your daughter and confront her about an issue?

[C.D.E.’s Mother]:  Yes.

[Prosecutor]:  What did you confront her about?

[C.D.E.’s Mother]:  A diary.

[Defense Counsel]:  Your Honor, I’m going to object. This is going into hearsay. It’s also violative of our motion in limine, and we at least ask that this line of testimony be investigated outside the presence of the jury. 

[The Court]:  All right. 

[Prosecutor]:  And, Judge, we have no objection to - I mean, we have - we agree with defense objection, ask that the last answer be stricken.

[Defense Counsel]:  Ask that the jury be instructed to disregard.

[The Court]:  The jury will so disregard. 

[Defense Counsel]:  And move for a mistrial.

[The Court]:  Denied.

A mistrial is an extreme remedy for prejudicial events occurring during the trial process and should be granted only when residual prejudice remains after objections are sustained and curative instructions given. 
 West v. State
, 121 S.W.3d 95, 106 (Tex. App.—Fort Worth 2003, pet. ref’d).  Only in extreme circumstances, where the prejudice caused by an improper argument is incurable, i.e., “so prejudicial that expenditure of further time and expense would be wasteful and futile,” will a mistrial be required.  
Id.
; 
see also Simpson v. State
, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), 
cert denied
, 124 S. Ct. 2837 (2004).  It is presumed that the jury will follow the trial court’s instructions to disregard the evidence.
 
 Gardner v. State
, 730 S.W.2d 675, 696 (Tex. Crim. App.), 
cert. denied
, 108 S. Ct. 248 (1987).  An instruction to disregard an improper jury argument is generally sufficient to cure error. 
 Shannon v. State
, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996).  Likewise, a prompt instruction to disregard will ordinarily cure error associated with an improper question and answer. 
 Simpson
, 119 S.W.3d at 272. 

Here, while Dunbar complains that the trial court erred in denying his two motions for mistrial, he does not address why the trial court’s instructions to disregard could not cure the alleged harm.  Further, we note that in both instances the trial court promptly instructed the jury to disregard.  Accordingly, we presume that the jury followed the trial court’s instruction. 
 See Gardner
, 730 S.W.2d at 696.  Thus, we hold that the trial court did not abuse its discretion when it denied Dunbar’s motions for mistrial. 
 See Hawkins
, 135 S.W.3d at 77; 
Mosley
, 983 S.W.2d at 259.

B.  The Diary

Dunbar also complains that the trial court erred when it overruled his objections to the admission of C.D.E.’s diary.  Specifically, Dunbar asserts that the statements contained in the diary are hearsay and are not admissible under any valid exception to the hearsay rule. 

1.  Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard.  
Burden v. State
, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); 
Green v. State
, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1200 (1997); 
Montgomery
, 810 S.W.2d at 379-80.  The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse.  
Montgomery
, 810 S.W.2d at 391.  We will not reverse a trial court's ruling on the admission of evidence as long as the ruling is within the zone of reasonable disagreement.  
Id
.

2.  Analysis

a.  Testimony of C.D.E.’s Mother 

As previously discussed, Dunbar objected to any mention of the diary on hearsay grounds during the State’s opening statement and again at the beginning of C.D.E.’s mother’s testimony.  The trial court sustained those objections and instructed the jury to disregard but denied Dunbar’s motions for mistrial.  Soon thereafter, the trial court held a hearing outside the presence of the jury regarding the propriety of the State’s attempt to elicit testimony from C.D.E.’s mother regarding her discovery of the diary.  At the conclusion of that hearing, the trial court ruled that the State could elicit testimony from C.D.E.’s mother that she found the diary but that the State could not elicit testimony regarding the contents of the diary.  Subsequently, the following exchange took place: 

[Prosecutor]:  And how is it that you came to know there was any problem?

[C.D.E.’s Mother]:  Found the diary.

[Defense Counsel]:  Your Honor, I’m going to object to any mention of the diary. 

[The Court]:  All right. Over –

[Defense Counsel]:  Hearsay.

[The Court]:  Overruled.

[Prosecutor]:  Where did you find the diary? Or how did you find the diary?

[C.D.E.’s Mother]:  I was packing [C.D.E.’s] overnight bag for her, which I typically do or did, and the diary was there. I found it. 

[Prosecutor]:  You had not seen the diary before?

[C.D.E.’s Mother]:  No. 

[Prosecutor]: And without disclosing any contents of the diary, what if anything, did you do next after packing the bag?

[Defense Counsel]:  Your Honor, I’m going to object.  This actually does call for hearsay.  And anything they did as a result of anything in the diary, I object to as hearsay. 

[The Court]:  All right, Overruled. 

[Defense Counsel]:  May I have a 
running objection to this
, Your Honor? 
I keep having to 
–

[The Court]:  You may.

[Emphasis added.]  
The State then elicited testimony from C.D.E.’s mother indicating that after reading her daughter’s diary, she discussed the contents of the diary with her daughter, she took her daughter to a police station, and her daughter gave police a statement.  She also testified that approximately two weeks later she and her daughter again met with police and that she gave police a written statement.  Finally, C.D.E.’s mother testified that she took her daughter to Cooks Children’s Hospital where she received a gynecological exam.  

Hearsay is a “statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” 
 Tex. R. Evid.
 801(d). 
 The rules of evidence define “statement” as “(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by [that] person as a substitute for verbal expression.”  
Id
. 801(a).  
However, an out-of-court statement need not be directly quoted in order to run afoul of the hearsay rules. 
 See Schaffer v. State
, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989).  As stated in 
Schaffer
, “where there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly.”  
Id
.  
Whether the disputed testimony violates the hearsay prohibition necessarily turns on how strongly the content of the out-of-court-statement can be inferred from the context. 
 Head v. State
, 4 S.W.3d 258, 259 (Tex. Crim. App. 1999). 

At trial, the State argued for admissibility asserting that the disputed testimony was admissible not to prove the truth of the matter asserted, but for the purpose of showing the effect that finding and reading the diary had on C.D.E.’s mother.
  On appeal, the State argues that the testimony did not constitute hearsay because the testimony did not concern any statement contained in the diary, but merely established that the diary existed, that C.D.E.’s mother had read the diary, and what she had done in response to finding and reading the diary.

Although we believe that, when taken in context, the jury could have deduced from the above referenced testimony the general substance of the diary’s contents, the record does not lead us to the “inescapable conclusion” that the evidence was offered to prove the truth of the statements asserted in the diary because the State offered the testimony not to prove the truth of the matter asserted, but for the purpose of showing the effect that finding and reading the diary had on C.D.E.’s mother
, and because the elicited testimony only described how C.D.E.’s mother came to suspect that her daughter was having sex with Dunbar and what she did in reaction to that suspicion.  
See
 
Tex. R. Evid.
 801(d); 
Schaffer
, 777 S.W.2d at 114; 
see also Head, 
4 S.W.3d at 262 (indicating that while the jury may have been able to deduce the substance of the out-of-court statements from the disputed testimony of the witness, the “trial court could have reasonably determined that this sort of inferential leap did not provide the requisite degree of certainty ‘that the State’s 
sole intent 
in pursuing this line of questioning was to convey to the jury’ the contents of the out-of-court statements.”) (alteration in original) (quoting 
Schaffer
, 777 S.W.2d at 114); 
Jordan v. State
, 852 S.W.2d 689, 693 (Tex. App.—Houston [14th 
Dist.] 1993) (holding statement not hearsay when offered by prosecutor only to demonstrate how police officer reacted thereto), 
aff’d
, 883 S.W.2d 664 (Tex. Crim. App. 1994).  Further, a
t the time the evidence was offered, the trial court could have reasonably concluded that the testimony would not prove the substance of any statement contained in the diary.  
See Head
, 4 S.W.3d at 262, 262 n.5 (indicating that at the time of the trial court’s ruling, the trial court could have reasonably concluded that the disputed testimony would not lead to any inescapable conclusions regarding the substance of the out-of-court statements).  Accordingly, we hold that the trial court did not abuse its discretion when it allowed the testimony.
 

C.  Admission of the Diary

Dunbar also complains that the trial court abused its discretion when it overruled his objections and allowed the State to introduce the diary into evidence, when it allowed C.D.E. to read accounts from her diary into the record, and when it allowed her to testify regarding the contents of the diary. 
The State responds that Dunbar failed to preserve error, if any, in the trial court’s admission into evidence of actual pages from the diary or in the admission of testimony from C.D.E. regarding the substance of her diary.  In addition, the State argues that “it is not at all certain” that the contents of the diary are hearsay under the circumstances of this case.

1.  Preservation of Error

On the second day of the trial, during C.D.E.’s testimony, the State offered into evidence three pages from C.D.E.’s diary, at which time Dunbar lodged the following objection: 

[Defense Counsel]:  Your Honor, we would object under Rule 613 of the Texas Rules of Evidence.  Apparently these statements are being offered as a prior consistent statement, and it specifically states in Rule 613 that prior consistent statements of a witness aren’t admissible.

[The Court]:  All right.  Overruled.  State’s Exhibits 1, 2, and 3 will be admitted. 

[Defense Counsel]:  And, Your Honor, we also add to that objection that this is a violation of due process of both the Texas and US constitutions. 

[The Court]:  All right.  Overruled. 

The State then asked to publish the exhibits by having the witness read them aloud.  After C.D.E. read the three pages from her diary, the State elicited testimony from C.D.E. regarding the assertions made on those pages.  

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. 
 Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), 
cert. denied,
 526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. 
 Tex. R. App. P.
 33.1(a)(2).  The purpose of lodging a timely and specific objection is to inform the trial court of the basis of the objection and to give the court an opportunity to rule on the specific objection as the evidence is introduced. 
 See Aguilar v. State,
 26 S.W.3d 901, 906 (Tex. Crim. App. 2000).  
To preserve error, a party must continue to object each time the objectionable evidence is offered. 
 Fuentes v. State,
 991 S.W.2d 267, 273 (Tex. Crim. App.), 
cert. denied,
 528 U.S. 1026 (1999); 
Ethington v. State,
 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991). 
 A request for a running objection is timely and preserves error as long as it does not encompass too broad a subject matter during too broad a time or over different witnesses.  
Ethington
, 819 S.W.2d at 858-59. 

The State argues that Dunbar failed to preserve error on hearsay grounds because he did not lodge a hearsay objection at the time the evidence was offered.  Further, the State argues that Dunbar’s running hearsay objection, granted during the testimony of C.D.E.’s mother, is too remote to preserve error during C.D.E.’s testimony.  In support of that position, the State points out that Dunbar’s running objection was granted the prior day, some 46 pages earlier in the record, and during the testimony of a different witness. 

After reviewing the record, we conclude that Dunbar preserved error.  As previously discussed, the record reflects that Dunbar objected to any mention of the diary during opening statement and that he renewed his objection several times before requesting and receiving a running objection from the trial court.  Moreover, the record reflects that during the first day of trial the trial court conducted a 
voir dire 
hearing on the subject of the admissibility of the diary shortly before granting Dunbar his running objection.  Thus, although the evidence at issue was not presented until the day following the trial court’s granting Dunbar a running objection and was presented during the testimony of another witness, the record reflects that the trial court was fully aware of Dunbar’s hearsay objection. 
 See Aguilar, 
26 S.W.3d at 906.  
Accordingly, we conclude that Dunbar properly preserved his hearsay objection for our review. 

C.  Analysis

Citing Rule 801(e), the State asserts that it is “not at all certain” that the admission into evidence of C.D.E.’s testimony regarding the contents of the diary and the admission into evidence of actual pages from the diary constituted hearsay because C.D.E. had attempted to recant her allegations and because Dunbar “undoubtedly would have interrogated her” about her inconsistent statement to prosecutors.

Rule 801(e) of the Texas Rules of Evidence provides:  

(e) Statements Which Are Not Hearsay.  A statement is not hearsay if:

(1) 
Prior Statement by Witness
. 
  
The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: . . . (B) consistent with the declarant’s testimony and is offered to 
rebut
 an express or implied charge against the declarant of recent fabrication or improper influence or motive

Tex. R. Evid.
 801(e)(1)(B) (Emphasis added). 

Here, 
the trial court admitted the evidence before there was any express or implied charge against the witness of recent fabrication, improper influence, or motive. Thus, 
the State did not offer the evidence to 
rebut
 an express or implied charge against the witness of recent fabrication, improper influence, or motive.  Therefore, the disputed evidence does not qualify as non-hearsay under Rule 801(e)(1).  Accordingly, we hold that the trial court abused its discretion in admitting the evidence. 

3.  Harm Analysis

Because we conclude that the trial court erred, we must conduct a harm analysis to determine if the error would call for reversal of the judgment. 
 Tex. R. App. P.
 44.2.  If the error is constitutional, we apply Rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant’s conviction or punishment.  
Tex. R. App. P.
 44.2(a).  Otherwise, we apply Rule 44.2(b) and disregard the error if it does not affect the appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley,
 983 S.W.2d at 259; 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).

Although the erroneous admission of hearsay evidence can implicate the confrontation clause of the Sixth Amendment,
(footnote: 4) we have no confrontation clause issue here because the out-of-court declarant testified and was available for cross-examination.
(footnote: 5)  
Further, both the court of criminal appeals and this court have treated a violation of the evidentiary rules resulting in the erroneous admission of evidence as non-constitutional error. 
 See
 
Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (applying Rule 44.2(b) harm analysis to the erroneous admission of hearsay evidence); 
Couchman v. State
, 3 S.W.3d 155, 160 (Tex. App.—Fort Worth 1999, pet. ref’d); 
see also Elder v. State
,
 
132 S.W.3d 20, 27 (Tex. App.—Fort Worth 2004, pet. ref’d) (indicating that the admission of inadmissible hearsay is non-constitutional error).  

Because we determine that the error is not constitutional, Rule 44.2(b) is applicable.  Therefore, we are to disregard the error unless it affected appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b).  A substantial right is affected when the error had a substantial and injurious effect or influence on the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall,
 961 S.W.2d at 643.  In making this determination, we review the record as a whole.  
Kotteakos
, 328 U.S. at 764-65, 66 S. Ct. at 1248.  
Where a fact to which hearsay relates is sufficiently proved by other competent and unobjected-to evidence, the admission of hearsay is properly deemed harmless and does not constitute reversible error. 
 Couchman
, 3 S.W.3d at 160-61; 
see Anderson v. State
, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986).  

Here, the record reflects that C.D.E. testified in detail regarding her sexual encounters with Dunbar independent of the diary.  Further, although on cross-examination C.D.E. admitted that one of the entries in her diary involving the second time she and Dunbar had engaged in sexual activity was not true, the record reflects that the jury acquitted Dunbar on that count.
(footnote: 6)  Thus, the trial court’s error in admitting the hearsay may have actually served to benefit Dunbar.  

Therefore, after reviewing the record, we conclude that, in the context of the entire case against Dunbar, the trial court’s error in admitting the hearsay in question did not have a substantial or injurious effect on the jury’s verdict and did not affect Dunbar’s substantial rights. 
 See King
, 953 S.W.2d at 271. We conclude that the error was harmless. 
 See
 
Tex. R. App. P.
 44.2(b). Accordingly, we overrule Dunbar’s third issue. 

VII.  Testimony Regarding the Police Investigation 

In his fourth, fifth, sixth, and seventh issues, Dunbar contends that the trial court abused its discretion by overruling his objections to the admission of certain evidence and by denying two motions for mistrial.  As a result, he asserts that he was denied a fair trial as required under article 1.03 of the Texas Code of Criminal Procedure, the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and the due course of law clause of article 1, section 19 of the Texas Constitution.
(footnote: 7) 
 U.S. Const
. amends. V, XIV; 
Tex. Const
. art. I, § 19
; Tex. Code Crim. Proc. Ann.
 art. 1.03(5) (Vernon 2005).
 

A.  Admission of Evidence

1.  Standard of Review

As previously discussed, we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard.  
Burden
, 55 S.W.3d at 615; 
Green
, 934 S.W.2d at 101-02
; 
Montgomery
, 810 S.W.2d at 379-80.

2.  Analysis

The Texas Rules of Evidence provide that to be admissible evidence must be relevant.  
Tex. R. Evid.
 402.  Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”  
Tex. R. Evid
.
 
401.  In determining whether evidence is relevant, courts look to the purpose for offering the evidence and whether there is a direct or logical connection between the offered evidence and the proposition sought to be proved.  
Reed v. State
, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd).  Furthermore, the court of criminal appeals has stated that “evidence merely tending to affect the probability of the truth or falsity of a fact in issue is logically relevant.” 
 Montgomery
, 810 S.W.2d at 376.  While all relevant evidence is normally admissible, Rule 403 mandates the exclusion of relevant evidence “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.” 
 Tex. R. Evid.
 402, 403; 
see also Jones v. State
, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 832 (1997).

1.  Naming Dunbar as the “Defendant”

In his fourth issue, Dunbar contends that the trial court abused its discretion by overruling his objection to testimony regarding whom Officer Lynnelle Rose had named as the “defendant” in the case.  Dunbar asserts that this testimony was unfairly prejudicial because it had the prejudicial effect of telling the jury that he was the subject of investigation from the very beginning and that he must be guilty because the officer named him as the defendant.  Thus, he argues that the trial court’s admission of this evidence over his objection violated Rule 403.  We disagree. 

In its opening statement, the State told the jury that C.D.E. had, prior to trial, recanted her allegations that she was having sex with Dunbar.  Thus, the State argues that evidence of who police identified as the defendant after first interviewing C.D.E. was relevant in determining which of C.D.E.’s multiple statements—her initial statement to police or her later recantation—were true.

Although we believe that this is a close call because C.D.E. had not yet testified regarding her recantation, we cannot say that the trial court abused its discretion in admitting the evidence because the trial court could have reasonably concluded that the testimony was relevant to the jury’s evaluation of C.D.E.’s allegations.  
See Montgomery
, 810 S.W.2d at 376.  Nor can we say that the probative value of the testimony was outweighed by the danger of unfair prejudice because Officer Rose’s testimony was not the type of testimony that would suggest that the jury make a decision on an improper basis.  
See Montgomery
, 810 S.W.2d at 389 (indicating that unfair evidence is that which has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one). 
 Accordingly, we overrule Dunbar’s fourth issue. 

b.  C.D.E.’s Willingness to Attend an Interview 

In his sixth issue, Dunbar contends that the trial court abused its discretion by overruling his objection to the testimony of Detective Jeffery Rogers wherein Detective Rogers testified as to his impression of C.D.E.’s willingness to attend an interview. 

At the time of Officer Rogers’s testimony, C.D.E. had already testified that she had told the lead prosecutor during the week preceding trial “that nothing happened between [herself] and [Dunbar].”  Thus, the State contends that Detective Rogers’s “present sense impression” regarding C.D.E.’s willingness to attend an interview was relevant in considering which of C.D.E.’s multiple assertions were true.  Again, after reviewing the testimony, we cannot say that the trial court abused its discretion because the trial court could have reasonably believed that the testimony was relevant to the jury’s evaluation of C.D.E.’s allegations.  
See Montgomery
, 810 S.W.2d at 376.  Nor, can we say that the probative value of this testimony was substantially outweighed by the danger of unfair prejudice.  
See Montgomery
, 810 S.W.2d at 389.  Accordingly, we overrule Dunbar’s sixth issue.   

B.  Motions for Mistrial

In his fifth and seventh issues, Dunbar contends that the trial court erred when it overruled his motions for mistrial.  Specifically, in his fifth issue, Dunbar contends that the trial court erred by denying two motions for mistrial after sustaining his objections and instructing the jury to disregard testimony regarding the swearing of a warrant affidavit and the filing of that affidavit.  In his seventh issue, he contends that the trial court erred when it denied his motion for mistrial after sustaining his objection and instructing the jury to disregard a question by the prosecutor regarding the investigator’s impression of whether C.D.E. was “telling the truth” during an interview with police.

As previously discussed, when the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial.  
Hawkins
, 135 S.W.3d at 77.  Further, 
a prompt instruction to disregard will ordinarily cure error associated with an improper question and answer. 
Simpson
, 119 S.W.3d at 272.  Here, the trial court promptly instructed the jury to disregard and Dunbar provides us with no compelling reason why the trial court’s instruction was not effective. 
 See Simpson
, 119 S.W.3d at 272; 
see also Gardner
, 730 S.W.2d at 696 (indicating that we presume the jury will follow the trial court’s instruction).  Accordingly, we hold that the trial court did not abuse its discretion when it denied Dunbar’s motions for mistrial. 
See Hawkins
, 135 S.W.3d at 77.  Dunbar’s fifth and seventh issues are overruled. 

VIII. Admission of the Presentence Investigation (“PSI”) Report

In his ninth issue, Dunbar contends that the trial court erred when it overruled his objections to the admission of a PSI report at the punishment stage of his trial.  Specifically, we interpret Dunbar’s contention to be that the PSI report contains a psychological evaluation by the PSI officer, and not merely a report by the PSI officer to the court of the evaluations of the experts who examined Dunbar, and that the PSI officer is not qualified as an expert in accordance with the rules of evidence to offer her opinions.

After reviewing the record, we cannot say that the trial court abused its discretion in admitting the PSI report into evidence.  
See Burden
, 55 S.W.3d at 615 (indicating that we review a trial court’s decision to admit or exclude evidence under an abuse of discretion standard).  Although the PSI report is written so that it could be argued that the PSI officer is rendering an evaluation of Dunbar’s psychosexual testing, it is equally plausible that the PSI officer is reporting the expert’s test results and opinions and the PSI report is just poorly drafted.  In that regard, the PSI report clearly indicates that the testing was  performed and interpreted by employees of professional entities, persons trained as licensed professional counselors with masters degrees, or persons with PhD’s, to whom Dunbar has raised no objection.  Further, we find nothing in the PSI report to indicate that the PSI officer claimed to be an expert in this area or claimed to be qualified to make such evaluations.  Thus, the wording of the PSI report is susceptible to more than one interpretation in this regard.  As such, we can not say that the trial court admitted the evidence without regard to any guiding principals or that its ruling lies outside the zone of reasonable disagreement.  
See Montgomery
, 810 S.W.2d at 391.  Accordingly, we overrule Dunbar’s ninth issue.  

IX. Conclusion

Having overruled each of Dunbar’s nine issues, we affirm the trial court’s judgment. 

BOB MCCOY

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 12, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
We will address Dunbar’s issue challenging the sufficiency of the evidence before addressing his remaining issues. 

3:
The record reflects that C.D.E. admitted during cross-examination that one entry in her diary was untrue. 
See
 
supra
 note 4.  

4:
See Simpson v. State
, 119 S.W.3d 262, 269 (Tex. Crim. App. 2003) (stating that the admission of hearsay evidence against a criminal defendant implicates the confrontation clause because the defendant is not afforded an opportunity to confront the out-of-court declarant). 

5:
Further, Dunbar did not object to the admission of the diary on confrontation clause grounds at trial, nor does he brief any related point on appeal.  

6:
During cross-examination C.D.E. admitted that the July 4, 2002 entry in her diary indicating that she and Dunbar “watched a dirty but sexy movie” was untrue.

7:
The record reflects that Dunbar failed to lodge any objection at trial based upon the constitutional and or statutory grounds he now asserts on appeal.  Thus, Dunbar has failed to preserve for this court’s review any error based thereon. 
See
 
Tex. R. App. P
. 33.1; 
Wright v. State
, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000), 
cert. denied
, 531 U.S. 1128 (2001).  Accordingly, we will not address these grounds on appeal.  
See Mendez v. State
, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004) (holding that failure to comply with 
Tex. R. App. P.
 33.1(a) results in forfeiture of error).